U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2012 FEB 14 AM 11: 18

CLERK
BY PM
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| MICHAEL E. FRENCH, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> WELLS FARGO ADVISORS, LLC, ) <br> ) <br> Defendant. ) | Case No. 5:11-cv-246 |

## OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION
## AND REQUEST FOR A STAY
(Doc. 3)

This matter came before the court on a motion to compel arbitration and for a stay filed by Defendant Wells Fargo Advisors, LLC (Doc. 3). Defendant contends that Plaintiff Michael E. French agreed to arbitrate certain claims against Defendant and that Plaintiff's claims in this lawsuit fall within the scope of the artbitration agreement. On that basis, Defendant moves to compel arbitration and requests a stay of this action. Plaintiff opposes the motion, arguing that Defendant had not complied with Fed. R. Civ. P. 56 and Local Rule 56 before bringing this motion and further arguing that the motion is premature.

Plaintiff is represented by John L. Franco, Jr., Esq. Defendant is represented by Patricia M. Sabalis, Esq.

## I. Factual Background.

Plaintiff is a former employee of Defendant and its predecessor, Wachovia Securities. In 1998, Plaintiff was hired as a licensed financial advisor and registered representative of First Albany Corporation. Through a series of corporate mergers and acquisitions, Plaintiff's employer became Defendant.

As a licensed financial advisor and registered representative, Plaintiff was required to maintain a current Form U-4, the Uniform Application for Securities Industry Registration or Transfer. The Form U-4 must be filed with the Financial Industry Regulatory Authority ("FINRA"), and also was required to be filed with FINRA's predecessor organizations, the National Association of Securities Dealers ("NASD") and the New York Stock Exchange ("NYSE"). All broker-dealers, including Defendant and its predecessors, use the Form U-4 to register the licenses of their brokers with organizations such as FINRA.

On December 3, 1998, Plaintiff completed and signed the Form U-4 as part of his registration with NASD and NYSE. In the Form U-4, Plaintiff agreed to "submit to the authority of the . . . organizations and agree to comply with all provisions, conditions and covenants of the . . . constitutions, certificates of incorporation, by-laws and rules and regulations of the . . . organizations as they are or may be adopted, or amended from time to time." (Doc. 3-1 at 9.) The Form U-4 contains the following arbitration clause, preceded by a heading that stated "THE APPLICANT MUST READ THE FOLLOWING VERY CAREFULLY":

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations indicated in item 10 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

(Doc. 3-1 at 9.)

During the course of his employment with Defendant and its predecessors, Plaintiff periodically updated and amended his Form U-4 as required by FINRA and NASD. In 2011, Plaintiff signed a memorandum acknowledging his agreement to arbitrate which pointed out some of the differences between arbitration and a court proceeding. The single page memorandum states in relevant part as follows:

> FINRA requires us to inform or remind you that the Form U-4 includes a Pre-Dispute Arbitration Clause for those amending their Form U-4, this clause can be found in Items 5 of Section 15A of the full Form U-4. You

2

should read that clause now. Before signing the Form U-4 you should understand the following:

(1) You are agreeing to arbitrate any dispute, claim or controversy that may arise between you and your firm, or a customer, or any other person, that is required to be arbitrated under the rules of self-regulatory organizations with which you are registering. This means you are giving up the right to sue a member, customer, or another association person *in court, including the right to a trial by jury, except as provided by the rules* of the arbitration forum in which a claim is filed.

(Doc. 3-1 at 19.)

On August 2, 2011, Defendant terminated Plaintiff's employment. In October 2011, Plaintiff filed a complaint in this matter, alleging bad faith termination "in violation of an actual or implied contract to terminate only for just cause and/or after progressive discipline." (Doc. 1 at ¶ 11.) Plaintiff seeks damages that include severance benefits, commissions, income, damages resulting from the acceleration of loans, and the taxable treatment of another loan.

## II. Conclusions of Law and Analysis.

The Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1-16, "requires the federal courts to enforce arbitration agreements, reflecting Congress' recognition that arbitration is to be encouraged as a means of reducing the costs and delays associated with litigation." *Vera v. Saks & Co.*, 335 F.3d 109, 116 (2d Cir. 2003) (quoting *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, United States*, 9 F.3d 1060, 1063 (2d Cir. 1993)); *see also David L. Threlkeld & Co., Inc., v. Metallgesellschaft Ltd.*, 923 F.2d 245, 248 (2d Cir. 1991) ("[F]ederal policy strongly favors arbitration as an alternative dispute resolution process."). Federal law requires that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Under the FAA, agreements to arbitrate controversies in any contract involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist

3

in law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under Section 4 of the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*

In determining whether to compel arbitration in this case, the court turns first to Plaintiff's procedural objections.

### A. Plaintiff's Procedural Objections.

Plaintiff argues that, in seeking arbitration, Defendant must comply with Fed. R. Civ. P. 56 and Local Rule 56 because "[a] motion to compel arbitration is governed by the standards for summary judgment" (Doc. 4 at 1). Plaintiff contends that Defendant's motion fails to comply with those rules. In addition, Plaintiff argues that Defendant's motion is premature and the court should allow discovery before ruling on the motion.

"In the context of motions to compel arbitration brought under the [FAA], the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Id.* (citing 9 U.S.C. § 4). Conversely, "[i]f undisputed facts in the record require[ ] the issue of arbitrability to be resolved against the Plaintiff as a matter of law, [the court can dismiss] and avoid the need for further court proceedings." *Id.*

In applying a summary judgment standard, courts generally do not import the procedural requirements of Fed. R. Civ. P. 56 in order to make a determination regarding whether there is a genuine issue of material fact and whether the issue of arbitrability may be decided as a matter of law. *See United States ex rel. Harris v. EPS, Inc.*, 2006 WL 1348173, at *4 (D. Vt. May 16, 2006) (rejecting argument that a party seeking to compel arbitration must comply with Fed. R. Civ. P. 56 and the corresponding local rule

4

where the relevant documents governing arbitrability are before the court.). Were the court to adopt this procedural requirement in every case, it would frustrate the FAA's purpose of expeditiously resolving claims through arbitration. *See Manning v. Energy Conversion Devices, Inc.*, 833 F.2d 1096, 1103 (2d Cir. 1987) (observing that "[a]rbitration is intended to be a process for the swift resolution of disputes" and that "policy favor[s] prompt initiation of arbitration").

Here, Plaintiff does not challenge the authenticity of the documents proffered by Defendant and points to no disputed issues of fact or even potential disputed facts that might be developed through discovery. In the absence of this evidence, the court must proceed to consider arbitrability on the factual record before it. *See Oppenheimer & Co., Inc., v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995) ("[I]t is not sufficient for the party opposing arbitration to utter general denials of the facts on which the right to arbitration depends. If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried."). The court thus turns to whether Defendant has established its right to compel arbitration as a matter of law.

### B. Whether There is an Agreement to Arbitrate.

A court conducts a two-step analysis to decide a motion to compel arbitration. The court first determines whether the parties "entered into an agreement to arbitrate." *Spear, Leeds & Kellogg v. Central Life Assur. Co.*, 85 F.3d 21, 25 (2d Cir. 1996). This step of the analysis is "separate and independent" from considerations of whether the instant claims are within the scope of any such agreement, *id.*, and "is strictly a matter of contract." *Thomson-CSF, S.A. v. Am. Arbitration Ass'n,* 64 F.3d 773, 779 (2d Cir. 1995) (citing *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 (1960)).

Defendant argues that the Form U-4 signed by Plaintiff contains a binding agreement to arbitrate. Plaintiff does not dispute this contention. Other courts that have considered the language of Form U-4, and similar language, have ruled that it constitutes

an agreement to arbitrate. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 25 (1991) (affirming decision that arbitration should be compelled, with reference to registration form for NYSE using language nearly identical to Form U-4); *Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran,* 445 F.3d 121, 123 (2d Cir. 2006) (compelling arbitration based on Form U-4 signed by defendant); *Thomas James Assocs., Inc. v. Jameson,* 102 F.3d 60, 65 n.2 (2d Cir. 1996) ("[Defendant] is bound by the Form U-4 because his signature manifests his assent."); *Filloramo v. NewAlliance Inv., Inc.,* 2007 WL 1206736 at *4 (D. Conn. 2007) (holding that the Form U-4 is "powerful evidence of an agreement to submit to arbitration").

In this case, Plaintiff not only signed that Form U-4 which contains an unambiguous agreement to arbitrate but reaffirmed that agreement several times, most notably in a 2011 memorandum which reminded Plaintiff that Form U-4 "[i]ncludes a Pre-Dispute Arbitration Clause," and advised Plaintiff to "read that clause now" "[b]efore signing the Form U-40." (Doc.3-1 at 19). The memorandum, which was signed by Plaintiff, reiterated the scope of the arbitration clause, provided an explanation as to how it would be applied, and identified some of the differences between arbitration and a court proceeding. Against this backdrop, the court finds that, as a matter of law, Plaintiff entered into an agreement to arbitrate.

### C. Whether Plaintiff's Claim Falls with the Scope of the Agreement.

The court next considers whether Plaintiff's claims fall within the scope of the arbitration agreement. A "presumption of arbitrability" arises if "a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand." *Granite Rock Co. v. Int'l Broth. of Teamsters,* 130 S. Ct. 2847, 2858 (2010). If this presumption is not rebutted, then courts should "adher[e] to the presumption and order[] arbitration." *Id.* at 2858-59.

The arbitration clause in Form U-4 applies to disputes that are "required to be arbitrated under the rules of the organizations." (Doc. 3-1 at 9.) The FINRA rules apply to "all members and persons associated with a member." FINRA Rule 0140(a). The

rules define a "person associated with a member" as "[a] natural person who is registered or has applied for registration under the Rules of FINRA." FINRA Rule 13100(r)(1).[1]

From December 3, 1998, to August 2, 2011, Plaintiff was registered with FINRA, or its predecessors, as a broker. Defendant and its predecessors are or were also members of FINRA or its predecessors. Thus, Plaintiff was a "person associated with a member" for purposes of the FINRA rules. Although Plaintiff may no longer be registered with FINRA, he is still subject to the FINRA rules.[2]

FINRA Rule 13200(a) states that "a dispute must be arbitrated . . . if the dispute arises out of the business activities of a member or an associated person and is between or among: . . . Members and Associated Persons." The term "business activities" encompasses a dispute arising from the employment or termination of an associated person. *See* SEC Release No. 34-56208, 72 Fed. Reg. 45077-02, 45078 (Aug. 6, 2007).

In this case, Plaintiff claims that he was wrongfully terminated and seeks to recover severance benefits, commissions, lost income, and other damages. Courts that have addressed the scope of the Form U-4 arbitration agreement have determined that claims similar to Plaintiff's are covered by the agreement to arbitrate. *See Hawkins v. Toussaint Capital Partners, LLC*, 2010 WL 2158332, at *4-5 (S.D.N.Y. May 27, 2010) (granting a motion to compel arbitration, pursuant to Form U-4, of claims for commissions and wrongful termination found to "arise[] out of . . . business activities"); *Thaning v. UBS/Paine Webber*, 2008 WL 2024884, at *3 (N.D. Cal. May 8, 2008) (granting motion to compel arbitration, pursuant to Form U-4, of claims for benefits under ERISA and for wrongful termination).

---

[1] In addition, this definition applies to an "associated person." *See* FINRA Rule 13100(a), defining "associated person" as "a person associated with a member."

[2] FINRA Rule 0140(c) states: "A member or person associated with a member who has been suspended from membership or from registration shall be considered as a non-member during the period of suspension for purposes of applying the provisions of the Rules which govern dealings between members and non-members. However, such member or person shall have all of the obligations imposed by the [FINRA] Rules."

Here, there can be no genuine dispute that Plaintiff's wrongful termination against Defendant is a "claim . . . that . . . arise[s] between [Plaintiff] and [his] firm" (Doc. 3-1 at 9) that "arises out of the business activities of a member or an associated person and is between or among: . . . Members and Associated Persons . . . encompass[ing] a dispute arising from the employment or termination of an associated person." See FINRA Rule 13200(a) & SEC Release No. 34-56208, *supra*. Accordingly, Plaintiff's wrongful termination claim falls within the scope of the arbitration agreement and the motion to compel arbitration must be granted.

### D. Request for a Stay.

In the event arbitration is compelled, Defendant requests the court to stay this case until arbitration is complete. When a court compels arbitration, it has "discretion to stay the proceedings or . . . conclude that the litigation should be dismissed." *Guida v. Home Savings of Am., Inc.*, 793 F. Supp. 2d 611, 620 (E.D.N.Y. 2011). If every claim has been submitted to arbitration, dismissal may be more appropriate. *See Berger v. Cantor Fitzgerald Sec.*, 967 F. Supp. 91, 96 (S.D.N.Y. 1997) ("As all of the plaintiff's claims must be submitted to arbitration, no useful purpose will be served by granting a stay of these proceedings. Final judgment is hereby entered dismissing this action and directing the parties to proceed to arbitration.").

On the other hand, pursuant to Section 3 of the FAA, if arbitration is compelled, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. In this case, Defendant seeks a stay rather than dismissal. Plaintiff has not opposed a stay other than opposing compelled arbitration in general. Accordingly, Defendant's request for a stay should be granted.

8

## CONCLUSION

For the reasons stated above, the court GRANTS Defendant's motion to compel arbitration and GRANTS Defendant's motion to stay proceedings until arbitration is complete (Doc. 3).

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 14th day of February, 2012.

Christina Reiss, Chief Judge
United States District Court